UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILDRED MAZGAJ; MARIAN ANTHONY,<br><br>    Plaintiffs,<br><br>v.<br><br>JASON CHARLES,<br><br>    Defendant. | Case No.: 3:24-cv-00777-JAH-MSB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 3]** |

## INTRODUCTION

Pending before the Court is Defendant Jason Charles' ("Defendant") Motion to Dismiss. ECF No. 3 ("Motion" or "Mot."). Plaintiffs Mildred Mazgaj and Marian Anthony (collectively, "Plaintiffs") filed a Response in Opposition to the Motion on May 31, 2024. ECF No. 6 ("Opposition" or "Opp'n"). No reply was filed. Both Plaintiffs and Defendant are proceeding *pro se*. Upon careful review of the Parties' briefing, the relevant law, and for the reasons set forth below, the Court **GRANTS** Defendant's Motion, and Plaintiff's Complaint (ECF No. 1) is **DISMISSED with prejudice**.

///

///

**BACKGROUND**

Plaintiff Mildred Mazgaj is the 78-year-old mother of Plaintiff Anthony, the father of two minor children. ECF No. 1 ("Complaint" or "Compl.") at 3.[1] Plaintiff Anthony "is the petitioner in a family court dissolution matter pending in the San Diego County Superior Court—*Marian Anthony v. Corina Galvez*, Case No. 19FL005322N (filed May 2, 2019)[.]" *Anthony v. Segura*, 2024 WL 3315996 (S.D. Cal. July 3, 2024). Plaintiff has filed two additional lawsuits in this judicial district relating to the family court dissolution matter: (1) *id.* (where Plaintiffs unsuccessfully sued the Honorable Daniel Segura, who presided over Plaintiff Anthony's child custody proceedings in state court); and (2) *Mildred Mazgaj and Marian Anthony v. Corina Galvez, et al.*, Case No. 3:24-cv-00776-JAH-AHG (where Plaintiffs filed a complaint against his current or former wife and other defendants for claims arising out of the state court dissolution and custody proceedings). Similarly, here, as best as the Court can determine from the Complaint, Plaintiffs are suing Defendant because of his involvement as an adverse witness in Plaintiff Anthony's state court proceedings. *See* Compl. at 7.

The Complaint alleges Plaintiff Anthony got to know Defendant through a series of weekly bible studies, hosted at Defendant's home, beginning in 2016. *Id.* at 15. During these bible studies, Plaintiffs claim the couples would separate into groups for men and women to openly discuss "marital challenges." *Id.* Plaintiffs claim Defendant did "not hav[e] any recollection whatsoever" of that "topic of discussion" during his testimony. *Id.* Plaintiffs further assert that this act of "perjury" is a violation of Defendant's "sacred *oath* as a teacher, an employee of the state[.]" *Id.*[2] Plaintiffs go on to suggest Defendant's conduct should be investigated by the U.S. Department of Education, though Plaintiffs fail

---

[1] Unless otherwise stated, page references herein will refer to the page numbers generated by the CM/ECF system. Additionally, because Plaintiffs' Complaint does not contain the numbered paragraphs that are typical of such pleadings, the Court will cite to the Complaint's page numbers.

[2] Plaintiffs describe Defendant as a schoolteacher in San Diego County. Compl. at 3.

to explain how Defendant's testimony in the state court proceedings is related to his official employment as an educator. *Id*. at 18.

According to the Complaint, Plaintiff Anthony is "an active member in the local San Diego County tennis community." *Id.* at 6. Plaintiffs maintain that, over the course of several years, Plaintiff Anthony would babysit and coach Defendant's minor children in tennis. *Id.* Plaintiffs even claim Plaintiff Anthony purchased new equipment for Defendant's children and thereafter maintained it for them. *Id.* Plaintiffs suggest Defendant gave Plaintiff Anthony the security codes to the tennis court next to Defendant's home, which Plaintiffs describe as "indicative of [the] high frequency" of Plaintiff Anthony's coaching of Defendant's children. *Id.* at 14; *see also id.* at 19-20. However, Plaintiffs contend Defendant "willfully denied the frequency" of Plaintiff Anthony's tennis coaching and babysitting duties during his testimony under oath. *Id.* at 12.

Plaintiffs also allege Defendant "conspired" with the mother of Plaintiff Anthony's children to "mislead the courts and law enforcement agencies as to manufacture a species of fraud, from misleading Police for tactical purposes, to misleading the Court with testimony … abetting to the creation of the situation of domestic terrorism." *Id.* at 14. However, the Court cannot locate any factual basis for this so-called "conspiracy" in the Complaint. Finally, according to the Court's reading of the Complaint, the only alleged connection between Plaintiff Mazgaj and Defendant is that Plaintiff Mazgaj had a "limited degree of acquaintance" to Defendant by attending children's birthday parties over "the course of years[.]" *Id.* at 18-19.

Plaintiffs' thirty-page Complaint is not structured according to causes of action, as is typical of this type of pleading. Instead, Plaintiffs cite many statutes throughout the body of the Complaint, many of which are criminal, including: 18 U.S.C. Sections 1001 (false statements and concealment of material facts); 1343 (wire fraud); 1344 (bank fraud); 1349 (attempted fraud and conspiracy to commit fraud); 1503 (obstruction of justice); 1512 (witness tampering); 1519 (destruction of evidence); 1621 (perjury); 1622 (subornation of perjury). *See, e.g., id.* at 2, 4, 17. Plaintiffs also interject the definition of domestic

terrorism, citing 18 U.S.C. Section 2331. *Id.* at 5. In addition, Plaintiffs refer to civil causes of action under 42 U.S.C. Section 1983, (*id.* at 2), as well as defamation, (*id.* at 25), throughout the Complaint.

## DISCUSSION

Defendant moves to dismiss this action, asserting defenses prescribed by Rule 12 of the Federal Rules of Civil Procedure. Specifically, Defendant challenges the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and Rule 12(b)(1) for lack of standing, and therefore lack of subject matter jurisdiction. Mot. at 2. As discussed below, because Plaintiffs cannot establish standing, the Court need not address the factual sufficiency of the claims in their pleading.

**I.** **Legal Standards**

**A. Federal Rule of Civil Procedure 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek to dismiss a complaint for lack of subject matter jurisdiction. *See Gould v. Mut. Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, the Court cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). When a defendant uses Rule 12(b)(1) to attack the face of the complaint, the court must accept the complaint's allegations as true. *Valdez v. United States*, 837 F.Supp. 1065, 1067 (E.D. Cal. 1993), *aff'd*, 56 F.3d 1177 (9th Cir. 1995).

**B. Standing**

A federal court's judicial power is limited to "cases" or "controversies." U.S. Const., Art. III § 2. A necessary element of Article III's "case" or "controversy" requirement is that a litigant must have "'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1152 (9th Cir. 2000). Therefore, standing is an essential component of the court's subject-matter jurisdiction. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

To satisfy Article III's standing requirements, the plaintiff has the burden of establishing: "(1) that plaintiff[] … suffered an injury in fact that was concrete and particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged conduct; and (3) that the injury was likely to be redressed by a favorable court decision." *Levine v. Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009). The plaintiff must prove all three of these factors in accordance with the standard of proof required at each stage of the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). For the complaint, the standard of proof is such that the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Here, those standards are even less stringent because a document filed *pro se* is to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## II. Analysis

### 1. Standing for Private Individuals to Bring Criminal Prosecution

As mentioned *supra*, Plaintiffs raise a laundry list of criminal codes in the body of their Complaint. "[I]n American jurisprudence … a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Retanan v. Cal. Dep't of Corr. & Rehab.*, 2012 WL 1833888, at *5 (E.D. Cal. May 18, 2012) ("it is well-established that a private individual has no constitutional right and standing to bring a criminal complaint against another individual"). Therefore, Plaintiffs lack standing to assert claims under any of the criminal codes mentioned in the Complaint. Accordingly, to whatever extent Plaintiffs attempt to use criminal statutes as causes of action, Plaintiffs' Complaint is **DISMISSED**.

### 2. Standing to Sue an Individual in His Capacity as a Witness in a Judicial Proceeding

Plaintiffs also refer to several civil causes of action, including defamation, (Compl. at 25), and a violation of Plaintiffs' constitutional rights by a public official under 42 U.S.C. Section 1983, (*id.* at 2). However, Plaintiffs also lack standing to assert these claims.

It is well established that "[w]itnesses in judicial proceedings are absolutely immune from lawsuits based upon their testimony." *Safouane v. Fleck*, 226 F.Appx. 753, 762 (9th Cir. 2007) (citing *Briscoe v. LaHue*, 460 U.S. 325, 331-32 (1983)). "The mere allegation of a conspiracy to affect the outcome is insufficient to defeat immunity." *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). Witness immunity is a longstanding rule of English common law created to alleviate a witness's reluctance to testify fully and honestly out of an apprehension of subsequent damages liability. *Briscoe*, 460 U.S. at 331-32.

This is one of several lawsuits Plaintiffs have filed against individuals (and one judge) involved in Plaintiff Anthony's state court proceedings. This case, specifically, is brought against Defendant because of his involvement as a witness in those proceedings (though the nature of the Defendant's testimony and its purpose in the state court proceedings is not made clear by the Complaint). As such, Defendant is entitled to witness immunity, and Plaintiffs lack standing to sue Defendant for any causes of action arising out of his involvement as a witness in Plaintiff Anthony's dissolution and/or child custody proceedings. Accordingly, the rest of Plaintiffs claims—to the extent any are properly alleged—are **DISMISSED**.

Furthermore, because Plaintiffs lack standing and, therefore, lack subject-matter jurisdiction, the Court need not address whether Plaintiffs' claims satisfy the standard set forth in Rule 12(b)(6).

### III. Dismissal With or Without Prejudice

The final issue before the Court is whether this action should be dismissed with or without prejudice. Dismissals for lack of subject-matter jurisdiction are ordinarily granted *without* prejudice. *See* Fed.R.Civ.P. 41(b); *Siler v. Dillingham Ship Repair*, 288 F.App'x 400, 401 (9th Cir. 2008) ("we vacate the district court's judgment to the extent it dismissed the complaint with prejudice, and remand for entry of judgment dismissing the complaint without prejudice because dismissal for lack of subject[-]matter jurisdiction is not an adjudication on the merits"). However, a district court may enter a dismissal *with* prejudice where it is "plainly unlikely that the plaintiff will be able to cure the standing problem."

*Fieldturf, Inc. v. Sw. Recreational Industries, Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004). Here, Plaintiffs' claims against Defendant are barred because Defendant is "absolutely immune" from lawsuits based upon his testimony. *Safouane*, 226 F.App'x at 762. Therefore, it is "plainly unlikely" Plaintiffs can cure their standing problem. *Fieldturf*, 357 F.3d at 1269; *see also Shorter v. California*, 2024 WL 4644841, at *17-19 (C.D. Cal. Sep. 23, 2024) (dismissing the plaintiff's claims *with prejudice* as to defendants with judicial and Eleventh Amendment immunity). Accordingly, Plaintiffs' Complaint is **DISMISSED with prejudice**.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED Defendant's Motion to Dismiss is **GRANTED**, and Plaintiffs' Complaint is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

DATED: February 25, 2025

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE